[Cite as *State v. Abraham*, 2025-Ohio-1446.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 113782 |
| v. | : | |
| RALIEGH ABRAHAM, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** April 18, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674860-A
Application for Reopening
Motion No. 582268

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen W. Knapp, Assistant Prosecuting Attorney, *for appellee.*

Raliegh Abraham, *pro se.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} On February 25, 2025 the applicant, Raliegh Abraham, applied, pursuant to App.R. 26(B) and *State v. Murnahan,* 63 Ohio St.3d 60 (1992), to reopen this court's judgment in *State v. Abraham,* 2024-Ohio-5600 (8th Dist.), in

which this court affirmed his convictions for two counts of substantial impairment rape under R.C. 2907.02(A)(1)(c).  Abraham now argues that his appellate counsel was ineffective for not arguing that the State suppressed exculpatory evidence and for improperly arguing that the verdict was against the manifest weight of the evidence.  Additionally, Abraham recites complaints about his trial, such as agreeing to try the case to the judge and not a jury; not testifying on his own behalf; his lawyer not arguing that the complaining witness's alcohol consumption and medication caused confusion and hallucinations; that he and the complaining witness did not engage in sex;  that the complaining witness was not impaired; that his trial counsel reminded the judge that rape renders the defendant a Tier III sex offender and the complaining witness's lack of credibility. The State of Ohio filed its brief in opposition on March 27, 2025.  For the following reasons, this court denies the application to reopen.

**FACTUAL AND PROCEDURAL BACKGOUND**

{¶ 2} Abraham and M.H. had known each other through a family connection.

{¶ 3} On November 22, 2021 Abraham contacted M.H.  M.H. agreed to meet with Abraham to get reacquainted.  After work, she went home, changed her clothes and drove to his house, which was nearby.  M.H. testified that she did not intend to have sex because she was suffering from genital herpes and was taking Valtrex. (Tr. 31 and 61.)  After she arrived, Abraham drove M.H. to a bar where she drank two "cherry bombs" (cherry vodka and Red Bull).  They danced and talked with another couple there.

{¶ 4} M.H. became ill and vomited in the bathroom. Because the bar was closing and M.H. was unsteady on her feet, Abraham helped her to his car. M.H. told him she wanted to go home, and she fell asleep in the vehicle. Abraham drove them to his house. He helped her out of the car, up the steps and into his bedroom. The next thing M.H. remembered was that she was lying on the bed with her legs draped over the side, her pants and underwear had been pulled down and Abraham was performing oral sex on her. She tried to push him off but lost consciousness again. When she awoke again, Abraham was engaged in vaginal sex with her. She told him to get off. He pulled off of her and asked, "What's wrong?" She pulled up her underwear and pants, grabbed her purse and left the house. She drove back to her home.

{¶ 5} Around 4:00 a.m., M.H. and Abraham exchanged text messages. Abraham asked what he did wrong, said that he was sorry and that he hoped that they could be friends. M.H. replied that she said "no" many times and that she said she wanted to go home. Abraham replied that is not what she said and that "You were the one who wanted to LOL I mean we both did but you did too I'm very sorry." M.H. replied that she said no and she told him to leave her alone.

{¶ 6} Around 9:00 p.m. on November 23, 2021, M.H. went to a Brunswick medical facility and was examined by a SANE nurse, who noticed several bruises on M.H. DNA swabs revealed Abraham's DNA on M.H.'s thigh.

{¶ 7} Abraham was indicted for two counts of rape and two counts of substantially impaired rape. After a bench trial, the court found him guilty of two

counts of substantially impaired raped and not guilty of the other two counts. The trial court sentenced Abraham to three to four-and-a-half years on one count and three years on the other, to be served concurrently, and he was designated a Tier III sex offender.

{¶ 8} Appellate counsel argued that the verdict was against the manifest weight of the evidence. He aimed his attack on the element of substantial impairment: whether the two drinks truly impaired M.H and whether it was proven that Abraham knew M.H. was substantially impaired. The argument was that his reactions immediately after the incident and in the text messages asking "What's wrong?" established that he did not consider M.H. to be impaired. Appellate counsel noted the investigating detective's testimony that M.H. did not have much memory of the incident, that he could not confirm the bar and that a "dump" of Abraham's phone found nothing relevant.

## LEGAL ANALYSIS

{¶ 9} In order to establish a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989); and *State v. Reed*, 74 Ohio St.3d 534 (1996).

{¶ 10} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that

it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶ 11} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745 and 751-752 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172 (1996).

{¶ 12} Even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable

probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland* at 694. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies. *Bradley*, 42 Ohio St.3d at 143.

{¶ 13} Appellate review is strictly limited to the record. *The Warder, Bushnell & Glessner Co. v. Jacobs*, 58 Ohio St. 77 (1898). Thus, "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. "Nor can the effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650 (2001). "Clearly, declining to raise claims without record support cannot constitute ineffective assistance of appellate counsel." *State v. Burke,* 2002-Ohio-5310, ¶ 10.

{¶ 14} Abraham's first argument is that the State suppressed exculpatory evidence by not disclosing the Facebook and text messages between him and M.H. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court of the United States held that the State violates the Fourteenth Amendment when it withholds evidence favorable to the defendant and material to the defendant's guilt or punishment. The evidence must be favorable to the defendant because it is exculpatory or because it is impeaching; the State must have suppressed the evidence either willfully or

inadvertently and prejudice must have ensued. *State v. Bethel,* 2022-Ohio-783, and *State v. Logan,* 2024-Ohio-2360, ¶ 39 (8th Dist.) However, *Brady* does not apply to materials that are not wholly within the control of the prosecution. *Logan* at ¶ 40.

**{¶ 15}** Abraham's argument is unpersuasive because the Facebook and text messages between himself and M.H. would not be wholly within the control of the State. Those messages would have been available through Abraham's own sources. Moreover, Abraham does not explicitly state what those messages are except to imply that M.H. had indicated that she would be open to sex. Without the specific evidence in the record, appellate counsel could not have made an authentic argument.

**{¶ 16}** Abraham's second assignment of error, that the verdict was against the manifest weight of the evidence, also fails. Appellate counsel argued this in the brief. He noted through the testimony of the investigating detective that M.H. did not have much memory of the encounter and that she could not remember the bar. The SANE nurse testified that M.H. told her that she believed they had kissed at the bar. Further, Abraham suggests that the text messages exchanged after the incident were inconsistent with Abraham knowing that M.H. was impaired.

**{¶ 17}** The last two pages of Abraham's application under his "Second Assignment of Error," consists of the legal principles for manifest weight. Abraham does not synthesize the facts of his case with these legal principles to make an argument that the verdict was against the manifest weight of the evidence. In examining appellate counsel's argument, this court concluded as follows: "After

examining the entire record and weighing all the evidence presented, we cannot say that this is the exceptional case where the factfinder lost its way in convicting Abraham of two counts of substantial impairment rape. In other words, his convictions are supported by the manifest weight of the evidence in the record." *Abraham,* 2024-Ohio-5600, at ¶ 58. Abraham does not establish prejudice.

{¶ 18} At the beginning of his application, Abraham lists complaints he has with the trial, such as that he did not testify, that he had a bench trial, that the combination of alcohol and medication caused M.H. to hallucinate that she had sex, other messages between M.H. and Abraham would have shown she was lying and his insistence he did not have sex with M.H. This laundry list of complaints does not fulfill the requisites of App.R. 26(B). "Merely reciting assignments of error, without demonstrating prejudice and presenting legal argument and analysis is not sufficient to support an App.R. 26(B) application for reopening." *State v. Townsend,* 2022-Ohio-4398, ¶ 7 (8th Dist.), and *State v. Harris,* 2025-Ohio-927 (8th Dist.).

{¶ 19} To the extent that his complaints do not have record support, such as the missing messages between M.H. and Abraham and medical evidence of the effects of Valtrex and alcohol, appellate counsel would have been precluded from making such arguments. Similarly, basing arguments on matters of trial strategy and tactics, such as whether to have a bench or jury trial and whether to testify, generally come within the Supreme Court's admonition to give deference to counsel's strategy and tactics. Appellate counsel in the exercise of professional

judgment declined to raise such issues. *State v. Smith,* 2023-Ohio-1533, ¶ 21 (11th Dist.).

**{¶ 20}** Accordingly, this court denies the application to reopen.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
ANITA LASTER MAYS, J., CONCUR